SETTLEMENT CAPITAL CORPORATION, Appellant,

Jody Lee Lundgren, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent-below,

Safeco Life Insurance Company, Respondent-below.

No. C5–01–2051.

Court of Appeals of Minnesota.

July 2, 2002.

**552**

John G. Westrick, Tammy L. Merkins, Westrick & McDowall–Nix, P.L.L.P., St. Paul, for appellant Lundgren.

Lawrence P. Zielke, Shapiro & Nordmeyer, LLP, Edina, for appellant Settlement Capital Corp.

Sean Simpson, Brian J. Slovut, Hinshaw & Culbertson, Minneapolis, for respondent State Farm Mut. Ins. Co.

Considered and decided by LANSING, Judge, ANDERSON, Judge, and PORITSKY, Judge.*

## OPINION

LANSING, Judge.

Jody Lundgren is the payee under a structured minor settlement. When she reached 21 years of age, Lundgren sought permission from the district court under Minn.Stat. § 549.31 (2000), to allow her to transfer some of her structured-settlement payment rights in exchange for a lump-sum payment from Settlement Capital Corporation. The district court denied her petition. Because the undisputed facts show that Lundgren did not receive independent tax and financial advice, we affirm the denial.

## FACTS

In 1986, when she was six years old, Jody Lundgren was involved in a car accident that caused permanent scars on her face and back and required stomach surgery. She settled her claims against the negligent parties and their insurer, State Farm Insurance Company, through a structured settlement funded by an annuity purchased by State Farm and issued by Safeco Insurance Company. The structured settlement provided that Lundgren would receive $1,000 monthly from August 20, 1998 (at age 18), through July 20, 2003; $750 monthly from August 20, 2003, to July 20, 2008; $800 monthly from August 20, 2008, through July 20, 2018; and $1,125 monthly from August 20, 2018, until her death. The terms of the structured settlement do not prohibit assignment.

When Lundgren turned 21 years old, she contacted Settlement Capital Corporation to inquire about transferring some of her structured-settlement payment rights in exchange for a lump-sum payment. Settlement Capital agreed to buy the payment rights from August 2001 through March 2011 in exchange for the lump sum of $50,615. Settlement Capital arrived at this figure by discounting the future payments to present value [1] using the relative-

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

**1.** Present value is the sum of money that would, with compound interest, amount to a specific sum on a specific future date, or put another way, the future value of the money discounted to today's value. *Black's Law Dictionary* 1203 (7th ed.1999). The higher the discount rate used to calculate the present

ly high discount rate of 15.986%. As part of the transaction, Settlement Capital agreed to pay its own attorneys' fees, attorneys' fees incurred by Lundgren exceeding $1,500, and any brokerage fees exceeding $4,000. Settlement Capital furnished Lundgren the disclosure statement required under Minn.Stat. § 549.31.

Settlement Capital petitioned the district court under Minn.Stat. § 549.31 (2000) for authorization of the transfer. At the motion hearing, Lundgren was represented by her own attorney. In response to court questioning, Lundgren testified that she was satisfied with her attorney's legal advice. Lundgren testified that she planned to use about $15,000 of the lump-sum payment to make a house down-payment she could not otherwise afford, about $11,500 to pay off a car loan, and the remainder to pay off miscellaneous bills and debts.

Lundgren testified that she holds a regular job in a group home for vulnerable adults and that her injuries from the 1986 car accident were scars that do not affect earning ability. She testified that the purchase of a house was in her best interests. She confirmed that she understood she was giving up her right to ten years of structured settlement payments; she also said that she understood the lump sum was significantly less than the total amount of the payments over time ($96,600) and less than the present-day value of the payments ($73,291.15) using a much-lower, 6.2% discount rate published by the Internal Revenue Service.

The district court denied the petition, finding that the transfer was not in Lundgren's "best interests" because she had no immediate health emergency or other pressing need for money, the lump-sum payment was too deeply discounted, and

value, the smaller the present value sum will be.

Lundgren had not received independent advice on the tax and financial implications of the transfer. The district court also questioned whether the transfer might affect the tax consequences of the remaining unsold payments under the structured settlement. Lundgren and Settlement Capital Corporation appeal the district court's denial of the petition.

## ISSUES

I. Do the requirements of the transfer statute apply to a structured settlement that does not prohibit assignment?

II. Did the district court apply the proper statutory criteria in finding that the transfer was not in the best interests of Lundgren?

III. Did the district court err in finding that Lundgren did not receive advice on the tax and financial implications of the transfer?

## ANALYSIS

The transfer of structured-settlement payment rights is governed by Minn.Stat. § 549.30–.34 (2000). Under this statute, a transfer is effective only if a court of competent jurisdiction or responsible administrative authority has authorized it in advance. Minn.Stat. § 549.31, subd. 1. The transfer statute requires that a district court approving a transfer must make express written findings on certain aspects of the transfer, including that the payee has established that the transfer is in his or her "best interests" and has received independent professional advice "regarding the legal, tax, and financial implications" of the transfer. *Id.* at subd. 1(c), (d).

■ The transfer statute was enacted in response to the growing practice of injured

persons selling their rights to future payments under a structured settlement in exchange for a lump-sum payment. At least 18 other states have enacted legislation requiring court approval of the transfer of structured-settlement payment rights. *See* Leo Andrada, Note, *Structured Settlements: The Assignability Problem*, 9 S. Cal. Interdisc. L.J. 465, 475 N. 32 (2000) (listing ten states, including Minnesota, that have enacted legislation requiring judicial approval for transfers of structured settlements); *see also* Del.Code Ann. tit. 10, § 6601 (Supp.2001); Fla. Stat. § 626.99296(3)(a) (2001); Idaho Code § 28–9–109(d)(13)(B)(iii) (Michie 2001); La.Rev.Stat. Ann. § 9:2715(B)(1) (West Supp.2001); Mass. Gen. Laws ch. 231C, § 2 (West Supp.2002); Mich. Comp. Laws Ann. § 691.1193, sec. 3 (West Supp.2002); Neb.Rev.Stat. § 25–3104(1) (Supp.2001); N.J. Stat. Ann. § 2A:16–66 (West.Supp. 2002); Ohio Rev.Code Ann. § 2323.583 (West 2000). One federal district court has upheld the Connecticut version of the statute—similar, but not identical, to Minnesota's transfer statute—against a constitutional challenge under the Contracts Clause. *Legal Asset Funding v. Travelers Cas. & Surety Co.*, 155 F.Supp.2d 90, 98–100 (D.N.J.2001) (recognizing potential vagaries of requiring court approval, but deferring to the "importance of the public purpose of the statute and the manner in which that purpose is being pursued").

## I

■ Settlement Capital and Lundgren first claim that the transfer statute only applies to the transfer of structured settlements that specifically prohibit assignment. The interpretation of a statute is a question of law, which we review de novo. *Lolling v. Midwest Patrol*, 545 N.W.2d 372, 375 (Minn.1996). We have not been provided with authority that would limit the scope of the statute, and we find no language in the statute that would so greatly constrict its terms.

■ The plain language of the statute establishes judicial oversight of the transfer that goes well beyond a cursory examination of the structured-settlement language allowing or prohibiting assignment. *Kersten v. Minnesota Mut. Life Ins. Co.*, 608 N.W.2d 869, 874–75 (Minn.2000) (providing that when statutory language is plain and unambiguous, it manifests legislature's intent, and appellate courts give statute its plain meaning). The first part of subdivision 1 plainly states that "[n]o direct or indirect transfer of structured settlement payment rights is effective * * * unless the transfer has been authorized in advance in a final order of a court of competent jurisdiction" based on express written findings. Minn.Stat. § 549.31, subd. 1. This statutory language is sufficient to vest power in a court to refuse to issue such an order if it cannot make the required statutory findings based on the evidence presented.

The second part of subdivision 1 vests the court with additional authority to allow the transfer even if the transfer would contradict the direct terms of the structured settlement. It provides:

> If the transfer would contravene the terms of the structured settlement, upon the filing of a written objection by any interested party and after considering the objection and any response to it, the court or responsible administrative authority may grant, deny, or impose conditions upon the proposed transfer as the court or responsible administrative authority deems just and proper under the facts and circumstances in accordance with established principles of law.

*Id.* Thus, the court is arguably empowered to override an anti-assignment clause,

but the statute is not restricted to that circumstance.

Under its plain language, the transfer statute applies to any transfer of structured-settlement rights, not just the transfer of structured settlements that forbid assignment.

## II

Settlement Capital and Lundgren also claim the district court erred in finding the transfer was not in the "best interests" of Lundgren. In particular, they allege that the district court erred in relying on the fact that Lundgren had not demonstrated an immediate health emergency that would require money.

Under the statute, if a court authorizes transfer, it must make "written express findings" that, among other things, "the payee has established that the transfer is in the best interests of the payee and the payee's dependents." Minn.Stat. § 549.31, subd. 1(c). Unfortunately, the statute does not define "best interests." *See* Minn.Stat. § 549.30 (defining 19 terms in the transfer statute, but not defining "best interests").

■ Lundgren and Settlement Capital do not dispute the facts that underlie the determination of best interests. Thus, we are essentially reviewing the district court's "weighing statutory criteria in light of the found basic facts." *Maxfield v. Maxfield,* 452 N.W.2d 219, 221 (Minn. 1990). We may correct erroneous applications of the law that factor into the ultimate issue of whether the transfer is in the best interests of Lundgren and her dependents. *Id.*

■ In the absence of a definition of best interests, the district court faces a daunting challenge in determining whether the transfer was in Lundgren's best interests. The court carefully analyzed the transaction and pointed out that the net amount of money Lundgren would receive under the transaction would be approximately $45,115. The payments under the original settlement would amount to $96,600 over the ten-year period that Lundgren proposes to transfer. Thus Lundgren would receive substantially less than half of the original structured settlement payments. The district court also took into account the purpose of structured settlements—to insulate injured persons from pressures to squander personal injury settlements which would leave them unable to provide for their lifetime needs. This purpose and the right of a competent adult to choose how to manage his or her own financial affairs imposes a tension that must be resolved by attempting to draw a reasonable meaning of best interests from all provisions of the transfer statute and from other statutes that include a best interests standard. *See Wong v. Am. Family Mut. Ins. Co.,* 576 N.W.2d 742, 745 (Minn.1998) (discerning meaning of legislative words and phrases through connection to other associated words and phrases).

■ First, we agree with Lundgren's argument that confining best interests to immediate health emergencies or other emergency circumstances may too narrowly define best interests. Our reluctance to confine best interests to narrow emergency circumstances is supported by the legislative history of the transfer statute. Several versions of the transfer statute originally introduced in the house and senate required that the payee demonstrate "imminent financial hardship" before the transfer could be approved. *See* S.F. 148 (1999); H.F. 478 (1999); S.F. 640 (1999); H.F. 771 (1999). This language requiring proof of "imminent financial hardship" was removed from the bill that was finally enacted; instead, the language used in its place was "best interests." Minn.Stat.

§ 549.31, subd. 1(c). The Minnesota legislature's decision to use the less-restrictive language is in line with several other states that have enacted a transfer statute. *See, e.g.,* Conn. Gen.Stat. § 52–225f(c)(1) (transfer must be in best interests of payee and fair and reasonable to all interested parties); Fla. Stat. § 626.99296(3)(a)3 (transfer must be in best interests of payee taking into account the welfare and support of their dependents); Neb.Rev.Stat. § 25–3104(1)(c) (transfer must be in best interests of payee); Ohio Rev.Code Ann. § 2323.583(B)(1) (transfer must be fair and reasonable and in best interests of payee and payee's dependents).

We believe that the best interests determination involves a more global consideration of the facts, circumstances, and means of support available to the payee and his or her dependents. These considerations would include, among other case specific factors, the reasonable preference of the payee, in light of the payee's age, mental capacity, maturity level, and stated purpose for the transfer. *See, e.g.,* Minn. Stat. § 518.17, subd. 1(2) (2000) (including reasonable preference of a child of sufficient age as factor to be considered in determining best interests of child); Minn. Stat. § 525.539, subd. 7 (2000) (including reasonable preference of a ward with sufficient capacity to express a preference as factor to be considered in determining best interests of ward).

The factors for consideration should also include whether the periodic payments of the structured settlement were intended to cover future income loss or future medical expenses. If so, the district court should inquire whether the payee has means of support aside from the structured settlement to meet these obligations. *See, e.g.,* Minn.Stat. § 549.25(1) (2000) (requiring district court to hold hearing if injured person receives jury verdict for future damages exceeding $100,000 to consider if structured settlement would permit injured person to meet obligations likely to be incurred in the future). The district court should also consider whether the offered discount rate is in line with the market rate for similar transfers. The discount rate used by Settlement Capital for this transfer is, on its face, relatively high, but not illegal, and also takes into account the payment of various fees that Lundgren might otherwise incur. The legislature has not provided a specific limit on the discount rate for such a transaction. Finally, the district court should consider whether the transfer is in the best interests of the payee's dependents; we believe this may involve an assessment of whether the payee can meet the financial needs of and obligations to the payee's dependents if the transfer is allowed to proceed.

We conclude that the criteria the district court applied to its consideration of whether the transfer was in the best interests of Lundgren and her dependents was too narrow. Lundgren is 21 years old and has no cognitive disabilities; she is married and has two children; she and her spouse have regular employment; her injuries from the car accident are primarily scars and do not affect her ability to earn income; she intends to use part of the lump-sum payment for a house down-payment she could not secure any other way; she understood the terms of the transfer and the use of the high discount rate for these transfers; and the high discount rate is standard for these transfers of structured settlements in a secondary market. No evidence suggested that Lundgren was unable to support her two children in the absence of the structured-settlement payments. Under these facts, we conclude that Lundgren has made a sufficient showing that the transfer is in her and her children's best interests.

## III

■ Settlement Capital and Lundgren also claim the district court erred in suggesting Lundgren would suffer adverse tax consequences from the transfer. The transfer statute requires not only that the payee establish that the transfer is in the payee's best interests, but also that the payee has received independent advice on tax and financial implications. Minn.Stat. § 549.30, Subd. 6. Thus, this issue involves interpretation of the transfer statute, which we review de novo. *Lolling,* 545 N.W.2d at 375. Factual findings will not be overturned unless clearly erroneous. Minn. R. Civ. P. 52.01.

The transfer statute requires the court to make an express written finding that "the payee has received independent professional advice regarding the legal, tax, and financial implications of the transfer." Minn.Stat. § 549.31, subd. 1(d). Independent professional advice means:

> [T]he advice of an attorney, certified public accountant, actuary, or other professional advisor: (1) who is engaged by a payee to render advice concerning the legal, tax, and financial implications of a transfer of structured settlement payment rights; (2) who is not in any manner affiliated with or compensated by the transferee of the transfer; and (3) whose compensation for providing the advice is not affected by whether a transfer occurs or does not occur.

Minn.Stat. § 549.30, subd. 6.

■ The district court found that Lundgren failed to show that she was given independent tax or financial advice. This factual finding is supported by the record. In the motion transcript, Lundgren did not establish she had received the required advice. In addition, the record is devoid of any evidence that Lundgren obtained this advice. Under the plain language of the statute, in the absence of the required

independent advice, the district court properly declined to approve the transfer. Once Lundgren has obtained the required independent tax and financial advice, she is free to petition for transfer a second time. This advice does not require an advisory opinion from the IRS or a court ruling on whether the transfer would affect the tax-free status of the remaining payments. Under the statute, the district court need not ensure that the transfer not affect the tax-free status of the remaining payments; instead, the district court simply must find that Lundgren has received independent tax and financial advice on the effect of the transfer.

## DECISION

The payee has demonstrated that the transfer is in her and her dependents' best interests. But because the payee has not demonstrated that she received independent tax and financial advice on the effect of the transfer, we affirm the order of the district court. Once the payee has obtained the statutorily required independent advice, the payee is free to petition the district court for approval of the transfer.

**Affirmed.**