OPINION OF THE COURT
George B. Ceresia, Jr., J.
Petitioner, Settlement Capital Corporation, has made application for approval of transfer of a periodic payment under General Obligations Law title 17, entitled “Structured Settlement Protection Act” (SSPA). The SSPA was adopted by the State Legislature in 2002 (L 2002, ch 537) to afford greater protection to individuals either entering into a structured settlement agreement or negotiating to sell or transfer a periodic payment thereunder to a third party. As relevant here, *712 the enactment provides for disclosure with respect to the terms and provisions of the proposed transfer, as well as prior judicial approval.
Turning first to procedural issues, the court notes that under General Obligations Law § 5-1705 (c), a copy of the notice of petition and petition shall be served upon all interested parties at least 20 days before the time at which the petition is noticed to be heard. The term “interested parties” is defined as “the payee,™ any beneficiary irrevocably designated under the annuity contract to receive payments following the payee’s death, the annuity issuer, the structured settlement obligor, and any other party that has continuing rights or obligations under such structured settlement” (General Obligations Law § 5-1701 [f]). In this instance, there is no evidence that any of the interested parties have been noticed on the application as required under General Obligations Law § 5-1705.[1]
[2] In the absence of such evidence, the court finds that the petitioner has failed to acquire jurisdiction over the necessary parties.
Apart from the foregoing, there is an obligation on the part of the proposed transferee that it make certain written disclosures “[n]ot less than ten days prior to the date on which the payee signs a transfer agreement” (General Obligations Law § 5-1703). The petition must include a copy of the disclosure statement and proof of notice of the statement (see, General Obligations Law § 5-1705 [d] [ii]). In this instance, according to an affidavit signed by the payee, the statutory disclosure was made “more than three days prior to my signing the agreement.” This is not sufficient to demonstrate compliance with the statute, which should be established through submission of an appropriate affidavit demonstrating the giving of the requisite 10-day notice in the statutory manner.
Turning to the merits of the application, the structured settlement payee is entitled to received the following periodic payments:
$40,000 payable on April 25, 2003
$55,000 payable on April 25, 2005
$81,165 payable on April 25, 2007
*713 The petitioner proposes to purchase a portion of the final payment, that is, the sum of $35,000 out of the $81,165 payment due on April 25, 2007. Under the proposal, petitioner would advance the sum of $15,750, referred to as the “gross advance amount” (see, General Obligations Law § 5-1701 [d]), which would be subject to a $2,500 attorney’s fee payable to the attorney for the petitioner. As a consequence the “net advance amount” payable to the payee (see, General Obligations Law § 5-1701 [g]) would be the sum of $13,250. The gross advance amount of $15,750 is allegedly computed by applying a discount rate of 18.621%. In exchange for the $13,250 cash advance made to the payee, the petitioner would then become entitled to receive the sum of $35,000 out of the $81,165 periodic payment due on April 25, 2007.
The court notes that the payee indicates in her affidavit that the $13,250 advance is needed in order to pay down her family’s credit card debt, currently exceeding the sum of $15,000. The payee’s affidavit is sworn to December 18, 2002. The instant petition was filed on January 7, 2003. The notice of petition was made returnable February 3, 2003. The timing of the application is significant because the papers do not adequately address very fundamental questions, to wit, (1) why is it necessary to pay off the credit card debt in full at this time? and (2) why is it that the payee cannot wait just a little longer (until Apr. 25, 2003) to utilize the next periodic payment ($40,000) to pay off her credit card debt? While the court recognizes that the payee would most certainly incur additional interest expense in awaiting the April 25, 2003 periodic payment, the court, in evaluating the instant application, is unable on the present record to conclude that the benefits of the proposed transaction would outweigh those to be gained simply by waiting a few months. Absent further information, the court is of the view that it cannot make a finding that the proposed agreement is in the best interest of the payee, “taking into account the welfare and support of the payee’s dependents” (General Obligations Law § 5-1706 [b]).
Notably, as a part of its review, the court is required to make a finding that the proposed discount rate used to determine the gross advance amount is fair and reasonable (see, General Obligations Law § 5-1706 [b]). To assist the court in making this finding, the applicant is required to provide a price quote from the original annuity issuer (or if such a price quote is not readily available, then a price quote from two other annuity is *714 suers) reflecting the current cost of purchasing a comparable annuity in the aggregate amount to be transferred (see, General Obligations Law § 5-1703 [d]). The following price quotes are contained in the petition:
Jefferson Pilot LifeAmerica Insurance Company $29,683.53
GE Capital Life Assurance Company of New York
As noted, a discount rate of 18.621% has been applied against the $35,000 figure to arrive at a gross advance amount of $15,750. No explanation has been presented as to why this particular discount rate was selected and/or why it should be deemed fair and reasonable. In the absence of such evidence, the court is of the view that it is unable to make the required statutory finding.
In addition, there are other matters which are of serious concern to the court. Included in the application is what is referred to as a servicing agreement. Under the servicing agreement, it is required that the court’s order contain a provision directing that all periodic payments under the structured settlement, from January 1, 2003 through April 30, 2007, be sent directly to the petitioner.[3] Left wholly unexplained is why such a provision, involving periodic payments not subject to the proposed transaction, would be necessary or reasonable. Secondly, even if the servicing agreement was confined to the $81,165 payment due on April 25, 2007, it is entirely unclear what protections are afforded the payee — to assure that once said sum is remitted to the petitioner, the payee will receive the balance of the periodic payment, after deduction of the sum of $35,000.[4]
Under all of the circumstances, the court is of the view that it is unable, on the present application, to make the necessary statutory findings under General Obligations Law § 5-1706 and specifically finds that as presented the proposed transfer is *715 not in the best interests of the payee. Further review of the application is unnecessary at this time. The court concludes that the petition must be denied without prejudice.[5]
Accordingly, it is ordered that the petition is denied without prejudice.

. The term “payee” is defined as “an individual who is receiving tax free payments under a structured settlement and proposes to make a transfer of payment rights thereunder” (General Obligations Law § 5-1701 fhl).

. In this instance, while a notice of petition has been submitted, petitioner has failed to submit an affidavit of service.

. It is also indicated that the petitioner will remit all payments and portions of payments not purchased by petitioner to the payee within 10 days of receipt.

. The court observes that the agreement of purchase and sale contains a provision granting petitioner a first priority security interest in the periodic payment due April 25, 2007, as well as a provision to require the payee, at petitioner’s request, to change her will to name petitioner as a beneficiary to receive the periodic payment. Significantly, reciprocal provisions, to protect the interests of the payee, are not included in the agreement. Thus, the payee is afforded no protection, for example, in situations where the petitioner becomes insolvent, is dissolved or declares (or is forced into) bankruptcy.

. One further comment should be made. Under General Obligations Law § 5-1704 (c) any provision that requires the payee to pay the transferee’s attorney’s fees or costs if the transfer contemplated by the transfer agreement is not completed is prohibited. Thus, to the extent that the agreement of purchase and sale and the disclosure statement recite to the contrary, they are “void and unenforceable.”