*873 OPINION OF THE COURT
Joseph D. McGuire, J.
Presented to the court is a petition seeking court approval for transfer of certain structured settlement payment rights from the beneficiary, John E. Platt, to the petitioner, Settlement Funding of New York, LLC (General Obligations Law § 5-1701).
On December 29, 1993, a settlement agreement was signed by John Platt (payee) and Transportation Insurance Company. That settlement agreement provided for an initial lump-sum payment to the payee, and monthly payments for life with 20 years certain.
The settlement agreement also permitted a qualified assignment to meet the requirements of Internal Revenue Code (26 USC) § 130. That clause permitted CNA Structured Settlements, Inc., the assignee, to fund the structured settlement payments by purchasing a qualified funding asset from Continental Assurance Company. It stated, “All rights of ownership and control of such annuity contract shall remain vested in the assignee absolutely.” On February 15, 1994, Continental undertook the obligation to make the monthly payments on behalf of CNA, the assignee of the settlement agreement.
On June 30, 2003, the payee, John E. Platt, signed an “Absolute Assignment and UCC Article 9 Security Agreement” (the transfer agreement). Pursuant to the transfer agreement, the payee agreed to transfer seven years worth of monthly payments of a certain amount, and then 44 additional monthly payments of a higher amount. The intended assignee of those payments is Settlement Funding of New York, LLC, the petitioner herein.
The transfer agreement is the subject of the present proceeding under the New York Structured Settlement Protection Act (the Act). The Act was effective July 1, 2002. Prior to the effective date, Platt assigned another portion of his monthly payments for which there was no request for judicial approval.
Pursuant to CPLR 2219, the court has considered the following: notice of petition, dated September 3, 2003; petition verified by the attorney for petitioner, dated September 3, 2003; exhibits A-F attached to the petition; statements of service and acknowledgment, dated September 20, 2003; affidavit of service, dated September 16, 2003; settlement agreement and release, entered into as of October 20, 2003; affidavit of Andrew S. Hill-man, dated October 29, 2003, with exhibits A and B attached; *874 memorandum of law with attachments, dated October 29, 2003. Oral argument by way of a hearing on the petition took place on October 16, 2003, at which John E. Platt was also present and provided the court with an opportunity to evaluate credibility, financial acumen, and the extent to which he was or was not being compelled to make the transfer.
The petition alleges that all disclosure requirements have been complied with, that there has been appropriate service of process, and all requirements of the federal and state statutes have been fulfilled.
There is no opposition to the petition. The payee specifically consents, and there was no appearance by the contingent beneficiary.
The transfer disclosure document signed by the payee on June 30, 2003 indicates that the aggregate amount of the payments to be transferred is $67,263.68. The discounted present value of the payments is said to be $52,309.28, using a discount rate of four percent. Comparable annuities are claimed to cost between $57,810 and $60,105.66.
The gross advance amount to the payee is $23,600 with an annual discount rate compounded monthly of 19.99%. The net advance amount is $21,400, after deducting legal fees and processing fees of $2,200.
The transfer disclosure document contains an acknowledgment by the payee of receipt of the disclosure 10 days prior to the receipt of the transfer agreement. It also contains language advising the payee to seek independent advice. An affidavit from the compliance manager of the petitioner confirms the proof of service of the transfer disclosure. Additionally, the payee has submitted an affidavit detailing many of the matters testified to by him at the hearing.
Significantly, the affidavit signed by the payee confirms that he was advised to seek professional advice, and “I chose not to retain or consult with such a professional. I understand that at all times, including at the time I entered into the Agreement and received the Disclosure Statement, and for all times, I knowingly waive the right to seek or obtain for myself independent professional advice regarding the Agreement.” At the hearing, payee indicated he had spoken with an attorney about the matter.
The court has been provided with an affidavit by the chief executive officer of a consulting firm who rendered an opinion *875 about the fairness and reasonableness of the discount rate in this transaction. This affidavit explains that there is a discount rate range from 15.5% to 25%, which range is determined by marketplace factors. The affidavit opines that the majority of similar transactions are within a range of 18% to 21% per annum. Some of the factors detailed included the size of the transactions, the duration of the transactions, carrying costs, fund costs, default risks, up-front costs, limited buyers, and credit worthiness of sellers. Not surprisingly, this individual believes that the purchase price in the instant transaction is fair, reasonable and consistent with the applicable market rate.
The Act (General Obligations Law § 5-1701 et seq.) requires a court to make certain procedural and substantive determinations when a decision is made to approve or disapprove an intended transfer.
Procedurally, the court must be satisfied as to the proper venue of the action, that the appropriate copy of the notice of petition and petition has been served upon interested parties at least 20 days prior to its return date, that the petition contains proper copies of transfer agreements and disclosure statements and listing of dependents (General Obligations Law § 5-1705). Interested parties include the payee, any irrevocably designated beneficiary, the annuity issuer, the structured settlement obligor, and any other party with continuing rights or obligations (General Obligations Law § 5-1701 [f]). There must be advance notice to the payee 10 days prior to the date on which the transfer agreement is signed (General Obligations Law § 5-1703).
The court is also required to review the transfer agreement to be certain there are no prohibitive provisions contained therein (General Obligations Law § 5-1704), and that mandatory language is present (General Obligations Law § 5-1708). The documents must also be examined to be certain that the payee was properly advised in writing to seek independent professional advice and receipt of such advice or knowing waiver of it, and that the transfer agreement is written in plain language as required by consumer transactions (General Obligations Law §§ 5-1706, 5-702).
Specific findings on substantive matters are also required to determine if “the transfer is in the best interest of the payee, taking into account the welfare and support of the payee’s dependents; and whether the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount, are *876 fair and reasonable” and to show that “the transfer does not contravene any applicable statute or the order of any court or other government authority ...” (General Obligations Law § 5-1706 [b], [d]).
Although the statute does not define the best interests of the payee, developing case law and the intent of the statute suggest the court should consider: (1) the payee’s age, mental capacity, physical capacity, maturity level, independent income, and ability to support dependents; (2) purpose of the intended use of the funds; (3) potential need for future medical treatment; (4) the financial acumen of the payee; (5) whether payee is in a hardship situation to the extent that he or she is in “dire straits”; (6) the ability of the payee to appreciate financial consequences based on independent legal and financial advice; (7) the timing of the application (see Matter of Settlement Capital Corp. [Ballos], 1 Misc 3d 446 [Sup Ct, Queens County 2003], and cases cited therein; In re Transfer of Structured Settlement Rights by Spinelli, 353 NJ Super 459, 803 A2d 172 [2002]; see Settlement Capital Corp. v State Farm Mut. Auto. Ins. Co., 646 NW2d 550 [Minn 2002]). Using a more “global consideration” (Settlement Capital Corp., 646 NW2d 550, 556) of best interests, applied judiciously, is preferred here over the sometimes stated desire to limit the application of the law to hardship cases only. Such an interpretation, if desired by legislators, is best left to them. Stating it as their intent in a legislative memo (see Mem of NY State Assembly, L 2002, ch 537, 2002 McKinney’s Session Laws of NY, at 2035) but not including the phrase in the legislation persuades the court that the legislators really intended the court to have the necessary discretion to approve transfers even though they may not be true “hardship” or “dire straits” situations. When the court is given discretion without a limiting definition, this court assumes it can be applied selectively, but not necessarily restrictively, and surely not in a paternalistic sense when adult, competent litigants are involved.
Similarly, the concept of fair and reasonable is left undefined in the Act. Considerations involved in that determination, however, are mentioned in the statute as including fees and expenses being incurred and the discount rate that is applied.
Knowledge of fees and expenses are fairly simple of calculation based on court familiarity with other litigation matters and an evaluation, if necessary, of the amount of time, expertise and other factors normally involved in establishing the validity of attorney’s fees.
*877 The proper discount rate is more elusive. There have been reported cases in which it was held some rates used were not fair and reasonable, with rates of 18.621% (Matter of Settlement Capital Corp., 194 Misc 2d 711 [2003]); 15.591% (Matter of Settlement Capital Corp. [Bollos], 1 Misc 3d 446 [Sup Ct, Queens County 2003]); and 15.46% (Matter of Settlement Funding of N.Y., 195 Misc 2d 721 [2003]) being rejected. Approval by a sister state has been given for 17.964% for a knowledgeable borrower with a strong present cash need, and a preserved future payment (In re Spinelli, 353 NJ Super 459, 803 A2d 172 [2002]). Case law has referenced academic discussion of the concept (Scales, Against Settlement Factoring? The Market in Tort Claims Has Arrived, 2002 Wis L Rev 859 [2002]), but no concrete guideposts. Petitioner has submitted unreported cases in this state with rates of 19.93% (Settlement Funding [Huggins], Sup Ct, Bronx County, June 9, 2003); 20.586% (Settlement Capital [Miller], Sup Ct, St. Lawrence County, May 15, 2003); 19.95% (Settlement Funding [Curkendall], Sup Ct, Chemung County, Apr. 22, 2003); and 19.99% (Settlement Funding [Jordan], Sup Ct, Erie County, Apr. 1, 2003).
Concern has been expressed about the ability of the court to even take any action in the face of a prohibition on assignment contained in the annuity contract that names the payee as CNA and the owner as CNA and the annuitant as John Platt. This has been a consideration where there is stated opposition from the annuity issuer in certain cases (see Matter of Emerald Funding Corp. [Brown], Sup Ct, Monroe County, June 4, 2003; Matter of Coggins & Settlement Capital Corp. [Travelers], Sup Ct, Dutchess County, Apr. 17, 2003; Matter of Settlement Capital Corp. [Eaton], Sup Ct, Wyoming County, May 22, 2003; Matter of Ovation Capital [Jackson], Sup Ct, Erie County, July 7, 2003). Language of the agreements in those cases when the prohibition was enforced appears to be a factor as well. Those cases reference the settlement agreement, and in this case, the settlement agreement does not prohibit the assignment, although similar language appears in the annuity contract. Notwithstanding such restrictive language in an annuity contract, one may nevertheless be assigned if the rules of the Act are otherwise satisfied (see Insurance Law § 3212 [d] [4]).
1. Procedure.
Petitioner has fully complied with the statute. Necessary copies of the documents have been submitted. Proper service on all defined interested parties has been accomplished (General *878 Obligations Law § 5-1705). The advance notice disclosure was timely given and its content is correct (General Obligations Law § 5-1703). The transfer agreement contains the required language and no prohibited terms are apparent (General Obligations Law §§ 5-1708, 1704). The acknowledgment by payee and the disclosure documents, together with the statements by the payee at the hearing, convince the court that proper advice was given and understood (General Obligations Law § 5-1706), and according to the payee, followed.
2. Best Interests.
The payee is gainfully employed and is self-supporting. He has no financial dependents. He is not mentally disabled and does not appear physically incapacitated. He will be able to enjoy over 40 years of life, based on existing mortality tables, and payments are to be made for his lifetime, notwithstanding whether the approval is given to the present transfer. The funds will be used for transportation needs to assist with continued employment, and for housing repairs and payment on some existing debt. There is no evidence of future medical needs. While the payee is not in dire straits, the transfer has been evaluated by the payee, who, in the last analysis, is the owner of the fund. Separate legal advice was given to the payee. The payee has considered alternatives and has researched other potential purchasers and has demonstrated a satisfactory understanding of the process. The intended sale is not done precipitously. There is no evidence of any likely future public dependency. There is, in short, no showing that the proposed transfer is not in the best interests of the payee.
3. Fair and Reasonable.
A legal fee of $2,000 and costs of $200 are well within the parameters allowed for document preparation, research, court appearance and argument, and other aspects of the legal work involved in these proceedings. Such a rate is unrelated to the amount in issue.
A discount rate determination is the area of this proceeding causing greatest concern. Petitioner argues that the court should adopt a noncase specific approach, primarily basing decisions on the nature of the industry with apparent emphasis on risk as a determinant of the rate selected. Argument is made that the decision should use variables often employed in setting attorney fees. Additionally, petitioner urges that other cases have approved discount rates similar, equal, or higher than the rate here.
*879 A discount rate is an elusive concept. It is said to be based on a measure of risk and expected growth of an investment. It has been said to be a combination of time, value of money and transactional risks. It has been referred to on occasion as an expected rate of return on “conservative” investments. Use of a preferred formula in a different setting with federal funds rates and treasury bond rates has been discussed (see Karagiannis v New York State Thruway Auth., 209 AD2d 993 [1994]).
Other fact patterns have been examined, but there is no consistent pattern. If anything, the history of the court involvement in this process suggests that each case must surely be decided on its own merits. No universal percent prohibition can be adopted as a judicial standard, given the need for flexibility and the function delegated to the courts to use their discretion. If it appears that there is a pervasive abuse of the process, individual situations will uncover that, or a more limiting legislative standard will likely result.
Given the current statute, given the court’s ability to see and hear the payee and raise such inquiries as it felt necessary, given the information provided about this industry, the fact pattern here present, and in the absence of any opposition, the court finds this proposed transfer to be fair and reasonable. The finding herein, as it is in other cases presented for comparison, must be limited to its facts and no blanket approval of the discount rate employed here is intended.