123 A.3d 1052

IN RE T. KEENA, TRANSFER OF STRUCTURED SETTLEMENT
PROCEEDS TO PEACHTREE SETTLEMENT FUNDING, LLC.

Superior Court of New Jersey
Law Division Atlantic County

Decided June 18, 2015.

*Tami J. Keena,* pro se.

*Lance J. Bitterman* for Peachtree Settlement Funding, LLC (*Fredson & Statmore, LLC,* attorneys).

NELSON C. JOHNSON, J.S.C.

This matter arises under the Structured Settlement Act, *N.J.S.A.* 2A:16–63 (hereinafter the "Act"), particularly, *N.J.S.A.* 2A:16–66, which requires approval of sale or transfer by the court, and a judicial finding that the sale is in the payee's best interest. Said section of the Act reads as follows:

> Court or administrative approval of transfer. No direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been approved in advance in a final court order or order of a responsible administrative authority based on express findings by the court or responsible administrative authority that:
>
> a. The transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents;
>
> b. The payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received the advice or knowingly waived the right to seek that advice in writing; and
>
> c. The transfer does not contravene any applicable statute or the order of any court or other government authority.

Trial judges are often called upon to resolve thorny issues involving litigants' personal lives: some entail second-guessing the wisdom of a person's choice, and more vexing, what's best for

them. Query, what must a trial judge find in order to conclude that it is in the "best interest" of a person to give up his or her right to receive future payments under a structured settlement in exchange for a reduced sum of money? There is no guidance from the Legislature and little from New Jersey common law. This ruling provides objective standards for evaluating such petitions.

## Background

The two parties to this matter and to the transaction for which approval is sought by this lawsuit are Tami J. Keena, payee/transferor, and Peachtree Settlement Funding, LLC, purchaser/transferee. This litigation was commenced by the filing of a complaint and order to show cause on April 29, 2015. The order to show cause was entered on May 13, 2015, with a return date of June 18, 2015. As is this court's routine practice, said order contained an addendum, prepared by the court, the purpose of which is to inform the payee/transferor of the seriousness of the transaction. Said addendum reads as follows:

> At the time of the hearing on this Order to Show Cause, the Payee/Transferor shall be prepared to provide, in detail, the reason(s) how/why the Payee/Transferor's life will be changed for the better; and whether the change is so significant that it is better to receive a substantially reduced sum now, rather than receiving the full amount later. In short, the Payee/Transferor should be prepared to explain how receiving less money now, as opposed to more money later, will change her/his life for the better and that it will "optimize" his/her life's circumstances?

As is the situation in 100% of such matters handled by this court, at the time of the hearing, the payee was unrepresented, and the purchaser was represented by counsel. The transaction provided for a sale of a future payment in the amount of $66,175, payable on June 19, 2019, for the sum of $46,250. This court has handled a large number of such transactions, and, relatively speaking, the proposed sale is more reasonable than most.

As part of its responsibility to make *express findings* that the proposed transfer will be in *the best interest of the payee,* it is this court's practice to ask questions eliciting information from the payee. Absent criteria from the Legislature, and with only one

published judicial decision on this issue by a New Jersey trial court, this court has developed a list of questions with an eye towards creating a coherent factual record upon which an informed decision may be made.

### Questions to Payees

The questions routinely posed by this court to payees on the sale of structured settlement payments are as follows:

(1) Date of birth?

(2) How far did you go in school?

(3) Where and with whom do you live?

(4) Is anyone dependent upon you?

(5) Do you have any other source of income beyond annuity payments?

(6) Tell me about the lawsuit that resulted in the payments you hope to sell.

(7) Discuss/detail the injuries sustained giving rise to the claim.

(8) Do you expect you will require future medical treatment for these injuries?

(9) Did you understand the terms of the structured settlement when you agreed to it?

(10) What has changed making the payment schedule no longer satisfactory?

(11) Who was the lawyer who handled that claim? Have you conferred with him/her regarding this proposed sale?

(12) Have you sought advice from anyone (professional or trusted friend) as to whether this a good move for you? Who?

(13) Tell me about the payments from prior sale(s) of any structured settlement payable to you: how were those funds used?

(14) If this transfer is approved, please detail how the funds will be used?

(15) Explain how the sum to be paid to you will benefit you to such a degree that it is better to receive that reduced sum now, rather than receiving the full amount on the date you originally agreed to?

As a result of the questions posed, the court learned that Keena is a thirty-six year old mother, and she was accompanied by her husband. They are the parents of two children, ages seven and three. Keena is a high school graduate and has two years of college. She and her husband are both employed, and they are not financially dependent upon payments from the structured settlement for their living expenses. At the time of the hearing, the family resided in Brigantine, New Jersey, a barrier island community in Atlantic County, which sustained substantial batter-

ing by Super Storm Sandy. Keena and her husband were able to repair their home, but are seeking to relocate to a mainland community. The proceeds from the sale of her structured settlement payment will be applied towards the purchase of a new home.

## Findings of Fact

As a result of the foregoing information, the court makes the following findings:

(1) Keena is mature, intelligent, and responsible. She fully appreciates the seriousness of this transaction.

(2) The Keenas have thought through this transaction and carefully "shopped the market" for competing offers and obtained a reasonable sum.

(3) Keena has no pending/future medical expenses arising from her original injuries.

(4) Neither Keena nor her family is dependent upon the payment(s) for their household or daily living expenses.

(5) Additional future payments remain available to Keena, and her plan for the use of said monies is to apply them towards her children's' educations.

(6) The proposed purchase of a new home will enhance the quality of life for Keena and her family.

(7) The proposed transaction is in Keena's "best interests."

## Evaluating "Best Interest"

This court is designated to hear all petitions for approval of the sale of structured settlements in Vicinage I. As a result, the undersigned handles many such applications during the course of the year. The court has learned that it is important to closely scrutinize the background and financial situation of the payee. This court's threshold inquiry is to learn how and why the payee's life will be changed for the better, and whether the change is so significant that it is better to receive a substantially reduced sum now, rather than receiving the full amount later. In short, will less money now, as opposed to more money later, change the payee's life for the better? Will it "optimize" the payee's life circumstances?

The court must never lose sight of the fact that at the time the structured settlement was entered into the purpose was to create a degree of financial security for the injured person. Ordinarily, at the time a structured settlement payment schedule is established by a plaintiff, or a plaintiff's parents and legal counsel, the purpose is to provide a degree of financial security, assuring that funds will be available at various benchmarks in a person's life. In short, it is a good faith effort to save people from themselves, by insulating injured persons from the temptation to possibly squander their settlements, leaving them unable to provide for themselves or their dependents. This purpose, and the right of any competent adult to choose how best to handle his or her own finances, creates a tension that can only be resolved by engaging in, what is of necessity, a case-by-case assessment of that person's situation and how the proposed transaction will benefit them long term.

Illustrative of categories of needs paid via the proceeds of such transactions which yield long-term benefits or address an urgent need, and which this court has approved over the years, are the following: (1) education expenses, (2) purchase of a home, (3) payment of debts that threaten continued occupancy of the payee's dwelling, (4) payment of debts/fines that prevent a payee from being employable, (5) payment of non-routine medical expenses for the payee or a family member, (6) purchase of a vehicle critical to the payee's ability to earn income, (7) retention of professional services needed to prevent a known harm, (8) wedding costs and expenses incurred in setting up a new household, (9) adoption costs and the expenses incurred in making arrangements for a new member of the payee's family, and (10) funeral expenses of a loved one of the payee.

In each of the above instances where the court found the proposed transaction would benefit the payee long term or address an urgent need, documentation was furnished demonstrating how the funds would be utilized. In some situations, legal counsel, paid for by the factoring company, was appointed to assist the

payee in completing the steps needed to ensure the funds were properly applied.

## Discussion of the Law

The Act was adopted by the Legislature in 2001. Prior to that adoption and subsequent thereto, many states across the nation adopted similar legislation. The language used to express the purpose of such legislation is similar.

In New Jersey, at the time of adopting the Act, the Legislature acknowledged the critical public policy underlying establishing structured settlement schedule(s) for injured claimants, and the need to protect payees from exploitation by factoring companies.

Structured settlements ... provide long-term protection for injury victims and their families. They provide against the loss or dissipation of lump sum recoveries. Factoring companies, commonly using phone banks, advertising and high-pressure sales to "buy" the settlement for a small lump-sum, undermine these benefits and may exploit an injured person at a time when they need cash.

[*Sponsor Statement to A.2146* (Feb. 28, 2000).]

More directly, the Legislature stated the purpose of the Act is to "protect recipients of long-term structured settlements from aggressive marketing by factoring companies seeking to persuade these people to cash out future payments at sharp discounts." *Ibid.*

The only source of "protection" for recipients of long-term structured settlements is a trial judge in the New Jersey Superior Court. The trial judge has the responsibility to make "express findings" that the proposed transfer "is in the best interest of the payee taking into account the welfare and support of the payee's dependents." *N.J.S.A.* 2A:16–66(a).

The only published decision on this subject by a New Jersey court is: *In Re Transfer of Structured Settlement Rights by Spinelli*, 353 *N.J.Super.* 459, 803 *A.*2d 172 (Law Div.2002). In *Spinelli*, the court notes:

The statute does not define the "best interest" standard of § 16–66(a). Nor have any regulations been enacted to clarify that term. There are no reported New Jersey cases applying the standard. This Court, therefore, interprets and applies the standard without any direct guidance.

[*Id.* at 466, 803 A.2d 172.]

The court continued by discussing how the term "best interest" is commonly applied in family law, probate law such as in trust matters, and in guardianship proceedings, *ibid*, stating that, "in essence, the term refers to optimizing the condition of the person, entity or public interest that the law is designed to protect." *Ibid.*

As noted by the court in *Spinelli*, the case law from other jurisdictions applying the term "best interest" as a standard for proposed transfer of structured settlement rights is sparse. This court's research revealed only one other published decision by a court in New Jersey, namely, *In Re: Jackus*, 442 *B.R.* 365 (Bankr.D.N.J.2011), which dealt with the sale of structured settlement payments where the payee/transferor had filed a Chapter 7 bankruptcy petition. There, the discussion is limited to the best interests of the trustee and creditors.

In looking to other jurisdictions for guidance, the court takes note of several decisions. The Court of Appeals of Kentucky in *Wentworth v. Jones*, 28 *S.W.*3d 309, 315 (Ky.Ct.App.2000) discussed the underlying public policy regarding structured settlements, and stated:

> We are mindful of the public purpose and philosophy underlying the law of structured settlements: to protect a class of injured plaintiffs beyond the moment of trial and the award of damages by extending that monetary umbrella over the span of their lives far into the future.

With regard to the paternalistic role assigned to trial courts by the Legislature in *Johnson v. Structured Asset Services, LLC*, 148 *S.W.*3d 711, 729 (Tex.App.2004), the Texas Court of Appeals stated:

> The Texas Structured Settlement Protection Act is a paternalistic statute: it requires disclosures and court approval before any transfer of structured settlement payment rights ... [W]e are mindful of the public purpose and philosophy underlying the statute: to protect the recipients of structured settlement payments who are in need of cash from exploitation by factoring companies.

The court also receives guidance from the New York decision *In re Settlement Funding of New York, LLC*, 2 *Misc.*3d 872, 774 *N.Y.S.*2d 635, 638 (Sup.Ct.2003), wherein the court dealt with a

statute similar to that in New Jersey, namely, one that fails to provide a definition for what is in the "best interest of the payee." Therein, the court expressed the following criteria:

Although the statute does not define the best interest of the payee, developing case law and the intent of the statute suggests the court should consider: (1) the payee's age, mental capacity, physical capacity, maturity level, independent income, and ability to support dependents; (2) purpose of the intended use of the funds; (3) potential need for future medical payments; (4) the financial acumen of the payee; (5) whether payee is in a hardship situation to the extent that he or she is in "dire straits"; (6) the ability of the payee to appreciate financial consequences based on independent legal and financial advice; (7) the timing of the application ... [*Id.* at 638–39.]

This court views those seven criteria as very helpful in analyzing whether or not the sale of structured settlements is in the best interest of the payee.

As discussed by the Minnesota Court of Appeals in *Settlement Capital Corp. v. State Farm Mutual Automobile Insurance Company*, 646 *N.W.*2d 550, 555 (Minn.Ct.App.2002), when dealing with a statute requiring express written findings that the transfer is in the payee's "best interest," absent a definition of the same, the court is faced with "a daunting challenge." In rendering its decision, the court opined on the issue of best interest as follows:

We believe that the best interest determination involves a more global consideration of the facts, circumstances, and means of support available to the payee and his or her dependents. These considerations would include, among other case specific factors, the reasonable preference of the payee, in light of the payee's age, mental capacity, maturity level, and stated purpose of the transfer.

... Finally, the [District] Court should consider whether the transfer is in the best interest of the payee's dependents; we believe this may involve an assessment of whether the payee can meet the financial needs of and obligations to the payee's dependents if the transfer is allowed to proceed.

[*Id.* at 556 (citations omitted).]

## Conclusion

As learned first-hand by trial judges across the nation, and as revealed by the above sampling of case law, the responsibility of the court is a heavy one. The court's obligation is much more than merely inquiring into whether the payee is competent and has voluntarily entered into the agreement with knowledge of

its consequences. It is not enough for the court to merely learn that the payee understands the consequences and the significant sacrifice being made through the sale. The court must make "express findings" that the proposed sale is in the payee's "best interest" by somehow improving his or her life (or addressing an urgent need), making the loss of future income and the receipt of a lesser sum now akin to an investment in the future which will enhance his or her life in a meaningful way. This is the primary means by which to "optimize" the lesser sum, namely, using it to augment the payee's life's circumstances in a manner that waiting for the money could never do.

The court concludes that Keena's decision to sell a future payment, payable under a structured settlement, is in the "best interests" of both her and her family. Accordingly, the proposed sale pursuant to her contract with Peachtree Settlement Funding, LLC, dated April 14, 2015, is hereby approved.