NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 61

No. 2016-421

| | |
|---|---|
| Stevens Law Office | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Lamoille Unit, Civil Division |
| | |
| Symetra Assigned Benefits Service Company, Symetra Life Insurance Company and Shane Larock | May Term, 2017 |

Thomas Z. Carlson, J.

Harold B. Stevens of Stevens Law Office, Stowe, for Petitioner-Appellant.

Symetra Assigned Benefits Service Company and Symetra Life Insurance Company, Pro Ses, Bellevue, Washington, and Shane Larock, Pro Se, Burlington, Respondents-Appellees.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **CARROLL, J.** Petitioner Stevens Law Office appeals a trial court decision denying assignment of a future structured settlement payment from a fund administered by Symetra Assigned Benefits Service Company for legal services rendered by petitioner on behalf of beneficiary Shane Larock. We reverse and remand so that the trial court can conduct the best-interest analysis required by statute before determining whether to deny or approve assignment of a structured settlement payment.

¶ 2. Shane Larock retained petitioner to represent him in a child in need of care or supervision (CHINS) proceeding which he expected to follow the birth of his daughter in early 2016. As payment, petitioner asked Larock for a $16,000 nonrefundable retainer which would be paid through assignment of that sum from a $125,000 structured settlement payment due to Larock in 2022. Under this arrangement, the structured settlement payment issuer, Symetra Assigned Benefits Service Company, would pay petitioner $16,000 directly when the 2022 periodic payment became due under the original terms of the settlement. Larock agreed to the fee arrangement and the assignment.

¶ 3. Petitioner asked the trial court to approve the assignment as required by 9 V.S.A. § 2480dd(a). The trial court held a hearing on the petition and took brief testimony from Larock. Larock expressed an understanding of the purpose of the proposed assignment and described his current circumstances. At the end of the hearing, the trial court asked petitioner to obtain the written opinion of bar counsel regarding the ethics of a nonrefundable retainer. Bar counsel thereafter forwarded recently amended Rule of Professional Conduct 1.5(f), which permits nonrefundable fees earned before provision of any legal services where the client both has notice that the fee is nonrefundable and concerning the scope of the services covered by that fee, and where the fee itself is reasonable. The trial court then issued a written order on October 26, 2016, concluding that it could not find that the fee arrangement was reasonable because, given petitioner's ongoing representation of Larock, such a determination would be speculative.

¶ 4. Petitioner filed a motion for reconsideration, which the trial court denied in a written decision on November 10, 2016. The court concluded that petitioner was seeking assignment of Larock's future payment rights as proxy to a collection action for payment and that

the Legislature did not intend that transfer of such future payment rights could be used to satisfy creditors. Petitioner now appeals to this Court.

¶ 5. On appeal, petitioner argues that the trial court abused its discretion by declining to engage in consideration of whether the fees charged by petitioner were fair and reasonable. Petitioner also argues that the trial court erred when it concluded that the Legislature did not intend transfers of future structured settlement payment rights be used for the payment of debt.

¶ 6. Our review is threefold. We will defer to the trial court's factual findings and uphold them unless they are clearly erroneous; we consider the trial court's legal conclusions de novo and will affirm those conclusions if the evidence reasonably supports them. Unifund CCR Partners v. Zimmer, 2016 VT 33, ¶ 10, __ Vt. __, 144 A.3d 1045. We review the court's discretionary rulings for abuse of discretion, and such rulings will be upheld unless the court exercised its discretion "for clearly untenable reasons or to a clearly untenable extent." Id. ¶ 15 (quotation omitted).

¶ 7. We begin with a brief introduction to structured settlements and the relevant law. Vermont's statute defines a structured settlement as "an arrangement for periodic payment of damages for personal injuries or sickness established by settlement or judgment in resolution of a tort claim." 9 V.S.A. § 2480bb(12). Settlement payments are usually funded by an annuity held by the obligor, the party that is contracted to make the payments. D.W. Hindert & C.H. Ulman, Transfers of Structured Settlement Payment Rights, 44 No. 2 Judges' J. 19, 19 (2005). Juries began to award structured settlements to tort claimants in the middle of the twentieth century, replacing the lump-sum payout model. See A.F. Scales, Against Settlement Factoring? The Market in Tort Claims Has Arrived, 2002 Wis. L. Rev. 859, 863-64 (2002) (citing M&P Stores, Inc. v. Taylor, 326 P.2d 804 (Okla. 1958) as example of early jury award of tort compensation

paid in installments rather than in single payment, a model later adopted and expanded in claims on behalf of children born after prenatal Thalidomide exposure). These settlements have been described as a means of ensuring that tort victims do not dissipate settlement proceeds, have some long-term income, and need not rely on public support, while at the same time lessening the financial cost borne by the obligor in a tort claim. See Scales, supra, at 869-74, 882-85.

¶ 8. As structured settlements became more prevalent during the late twentieth century, a new industry arose dedicated to trading in future periodic structured settlement payments. In this secondary market, beneficiaries due future payments through a structured settlement— payees—trade some or all of their future-payment rights to a third party in exchange for a discounted presently payable lump sum. Beginning with Illinois in 1997, a perceived need to protect settlement beneficiaries in these transactions, which have come to be called "factoring transactions," precipitated a wave of state legislation governing this secondary market. Hindert & Ulman, supra, at 20.

¶ 9. Transfers of future structured settlement payment rights are governed in Vermont by 9 V.S.A. §§ 2480aa-2480gg, legislation adopted in 2011. See 2011, No. 168 (Adj. Sess.). The purpose of this legislation is described in the statutory framework:

> Structured settlement agreements, which provide for payments to a person over a period of time, are often used in the settlement of actions such as personal injury or medical claims and serve a number of valid purposes, including protection of persons from economic victimization and ensuring a person's ability to provide for his or her future needs and obligations. It is the policy of this State that such agreements, which have often been approved by a court, should not be set aside lightly or without good reason.

9 V.S.A. § 2480aa. This purpose is given effect through the process outlined in § 2480dd and § 2480ff. Section 2480dd(a) stipulates that a transfer of any structured settlement payment is

ineffective unless "the transfer has been approved in advance in a final court order based on express findings." Specifically, the court must find that:

>    (1) the transfer is in the best interest of the payee taking into account the welfare and support of the payee's dependents, considering all relevant factors, including:
>
>    (A) the payee's ability to understand the financial terms and consequences of the transfer;
>
>    (B) the payee's capacity to meet his or her financial obligations, including the potential need for future medical treatment;
>
>    (C) the need, purpose, or reason for the transfer; and
>
>    (D) whether the transfer is fair and reasonable, considering the discount rate used to calculate the gross advance amount, the fees and expenses imposed on the payee, and whether the payee obtained more than one quote for the same or a substantially similar transfer.
>
>    (2)(A) the payee has been advised in writing by the transferee to seek independent professional advice regarding the financial advisability of the transfer and the other financial options available to the payee, if any, and:
>
>    (B)(i) that the payee has in fact received such advice; or
>
>    (ii) that such advice is unnecessary for good cause shown.
>
>    (3) the transfer does not contravene any applicable statute or the order of any court or other government authority.

9 V.S.A. § 2480dd(a).

¶ 10. Section 2480ff(a) stipulates that the transferee—the party seeking to obtain a payee's future payment rights—must file the application for transfer. At least twenty days prior to the hearing on the proposed transfer called for in § 2480dd(a), the transferee must provide notice of the proposed transfer to all interested parties and file certain documents with the court, including, among other items, the original court order approving the structured settlement agreement, the agreement itself, a list of payee's dependents, a statement of any prior transfers or

applications for transfer, and certification from an independent professional adviser that the payee has been advised on the "financial advisability of the transfer and the other financial options available" or a request that such independent advice is unnecessary. 9 V.S.A. § 2480ff(b). The required independent professional adviser must be either an attorney, a certified public accountant, an actuary, or other licensed adviser who meets three criteria: (1) the payee must engage the adviser "to render advice concerning the legal, tax, or financial implications of a structured settlement or a transfer of structured settlement payment rights"; (2) the adviser's payment "for rendering independent professional advice" may not be "affected by occurrence or lack of occurrence of a settlement transfer"; and (3) the adviser may not be referred to the payee by the transferee. 9 V.S.A. § 2480bb(5).

¶ 11. In 2002, the federal government gave teeth to state laws governing structured settlement factoring transactions by imposing an excise tax equal to forty percent of the factoring discount—the difference between the present lump sum payment and the amount of the transferred future payment—payable by any party gaining future payment rights through a factoring transaction unless the transfer received prior approval from a court in a "qualified order." Victims of Terrorism Tax Relief Act of 2001, Pub. L. No. 107-134, 115 Stat. 2427, § 115(a) (2002) (codified at 26 U.S.C. § 5891). A "qualified order" is a "final order, judgment, or decree" that finds that the transaction in question "is in the best interest of the payee, taking into account the welfare and support of the payee's dependents" and is issued by a court pursuant to a statute in the payee's domicile state, which provides a process by which a court order approving a factoring transaction may be issued. 26 U.S.C. § 5891(b)(2).

¶ 12. The takeaway from the preceding discussion is that a trial court must engage in the best-interest analysis called for by state and federal statute before either approving or denying a

6

transfer of future structured settlement payment rights. Neither state nor federal statute distinguishes between a transfer of the kind at issue here and a true factoring transaction, wherein a payee transfers future payment rights to a third party in return for a discounted lump sum presently payable to the payee. Thus, the same best-interest analysis is required before approving a factoring transaction or a transfer such as the one here—wherein payee Larock would directly transfer a portion of his future payment rights to petitioner without changing the future payment date and in exchange for legal representation.

¶ 13. In this case, the trial court declined to reach that necessary best-interest analysis. In its October 26, 2016, decision on petitioner's initial transfer application, the court stated that "[t]here are too many variables to consider and judgments to make in both [petitioner's] past and ongoing representation of Mr. Larock. Indeed, any determination of reasonableness is entirely speculative at this point." And in its November 10, 2016, decision on petitioner's motion for reconsideration, the court first acknowledged that "the Legislature has required the [c]ourt to exercise a kind of guardianship role that requires the [c]ourt to make its own determination as to the payee's best interests" but then characterized the proposed transfer as "essentially a collection action." On that basis, the court declined to determine whether the transfer satisfied statutory best-interest criteria because, according to the court, the Legislature did not intend that transfers of future structured settlement payment rights could be used to satisfy creditors.

¶ 14. We agree that the Legislature has placed the trial court in the role of guardian tasked with balancing the value of a long-term income stream for a payee with the payee's right to determine the best use of his or her own income stream over the present and future. But a trial court exercises that guardianship role precisely through the best-interest analysis called for in § 2480dd(a). See Settlement Capital Corp. v. State Farm Mut. Auto. Ins. Co., 646 N.W.2d 550,

7

555 (Minn. Ct. App. 2002) (explaining best-interest analysis balances tension between "purpose of structured settlements—to insulate injured persons from pressures to squander personal injury settlements which would leave them unable to provide for their lifetime needs" and "right of a competent adult to choose how to manage his or her own financial affairs").

¶ 15.  The best-interest analysis requires consideration of each statutory factor—no single factor is dispositive.  Thus, even if it were clear that the Legislature, as the court suggested, did not mean to permit payees to satisfy creditors through structured settlement assignments, such a consideration would still only fall within the purview of a single statutory factor, § 2480dd(a)(1)(C), and would not absolve the court from considering the other factors.  Furthermore, other states have approved factoring transactions where the payee intends to use the discounted lump sum to pay creditors.  See, e.g., In re Spinelli, 803 A.2d 172, 178, 181 (N.J. Sup. Ct. Law Div. 2002) (approving transfer where payee intended to use proceeds to pay approximately $20,000 in debt); In re McGuire, No. 2006-22193, 2006 WL 2660927, at *2, 4 (N.Y. Sup. Ct. Sept. 15, 2006) (approving transfer where payee intended to use proceeds to "liquidate all unsecured debt in order to obtain greater use of current income, improve credit rating scores and lower the debt to income ratio so as to . . . purchase a residence").  Though Vermont's statute states that structured settlement agreements "should not be set aside lightly or without good reason," nothing in the statutory framework limits the possible purposes underlying a proposed transfer.  9 V.S.A. § 2480aa.

¶ 16.  That said, we have not previously considered the specifics of § 2480dd(a)'s analysis, but the courts of other states with similar legislation have applied a step-by-step, factor-by-factor analysis to determine whether a transfer is in a payee's best interest.  Thus, New York courts—even though that state's statute is silent regarding any specific factors for consideration—

consider at minimum seven factors.  In re McGuire, 2006 WL 2660927, at *2; see also In re Settlement Funding of N.Y., LLC, 774 N.Y.S.2d 635, 638-39 (N.Y. Sup. Ct. 2003).  In contrast, Pennsylvania courts consider just four factors.  In re Bendowski, No. 06-cv-3056, 2006 WL 2988465, at *6 (Pa. Ct. Comm. Pleas Aug. 24, 2006).  We conclude that the § 2480dd(a) best-interest analysis asks a court to weigh each listed statutory factor to determine whether a proposed transfer is in the payee's best interest.

¶ 17.  Vermont's statute requires the trial court to issue express findings of fact based on admissible evidence directed at each factor in § 2480dd(a).  Through consideration of each factor, no one of which should weigh more heavily than any other, the court determines whether a proposed transfer is in a payee's best interest.  Because the trial court here did not make express findings of fact on all factors based on admissible evidence, we remand for that purpose.

Reversed and remanded.

FOR THE COURT:

Associate Justice